IN ERROR.
.....
ALBANY,
Feb. & March,
1810.

JAMES
v.
M'KERNON.

WILLIAM JAMES,                } Appellant,

against

JOHN M'KERNON, Administrator } Respondent.
of PATRICK CONNOLLY, deceased,

A BILL was filed in the court of chancery, on the 2d *December*, 1802, by *Patrick Connolly*, *Michael Rawlins* and *Eleanor* his wife, against the appellant and *Bernard Connolly*, since deceased, as administrator of *Michael Connolly* deceased.

*Michael Connolly* died intestate and unmarried, the 10th *September*, 1799, leaving a personal estate of the value of about 40,000 dollars, to two-fifths of which, *Patrick Connolly* and *Eleanor Connolly*, (the wife of *Michael Rawlins*,) were entitled, as coheirs with *Bernard Connolly*, *John Connolly* and *Catharine Connolly*. The bill alleged, that the appellant and *Bernard Connolly* had possessed themselves of the personal estate, and converted it to their own use.

The object of the bill was to obtain a discovery and account, which, it was alleged, had been refused, under pretence that the appellant had obtained an assignment, for a valuable consideration, of a judgment in the supreme court, in favour of *Nathan Haley*, against *Bernard Connolly*, as administrator of *Michael Connolly*, for 31,613 dollars and 33 cents, which would absorb all the intestate's personal estate ; and the bill charged, that the judgment was purchased by the appellant for the sum of 8,000 dollars, or some other small consideration, for the benefit of the heirs of *Michael Connolly*, and was paid for with money belonging to the estate. The bill was for a decree of the payment of the distributive shares of the complainants, and for relief generally.

Where a bill in chancery was filed for an account, and the defendant, in his answer, set up an agreement under seal between the parties, in defence, it was held, that the complainant could not prove the agreement to be fraudulent, as there was no allegation of fraud in his bill. No interrogatories can be filed in a cause, which do not arise from, or relate to, some fact charged in the complainants' bill. Nor can any depositions be read, which do not relate to some fact put in issue between the parties, by the bill and answer. And where such depositions are read at the hearing, and the court of chancery decides upon the evidence, though no objection be made at the time, the decree will be reversed, on appeal.

IN ERROR.

ALBANY,
Feb. & March,
1810

JAMES
v.
M'KERNON.

*Bernard Connolly*, in *February*, 1803, filed his separate answer, in person; but as there appeared to be no connection of interest between him and the appellant, and the answer of one defendant is no evidence against the other, it is not material to state it.

The appellant filed his separate answer, the 7th *March*, 1803, in which he admitted that the complainants were next of kin to *Michael Connolly*, and entitled to their distributive shares of his personal estate. That *Patrick Connolly*, *Eleanor Connolly* and *Bernard Connolly*, to induce the appellant to undertake the saving and collecting the intestate's property, which was scattered in different places, in the hands of strangers, exposed to loss and embezzlement, and to recover which, a greater share of enterprise and talent than they possessed was requisite, on the 24th *September*, 1799, executed and delivered to the appellant, an instrument, under their hands and seals, by which the appellant undertook, at his own expense and risk, to recover the whole, or part of the personal property of the said *Michael Connolly* deceased, not then in the possession of the said *Patrick*, *Eleanor* and *Bernard*, in consideration of which, the said *Patrick*, *Eleanor* and *Bernard*, agreed and bound themselves to the appellant, that he should have to his own use, the one equal half part of all and every part of such property which he might recover or obtain, or the value thereof from them.

That administration of the intestate's estate was granted to *Bernard Connolly*, who, on the 23d *September*, 1799, executed a power of attorney to the appellant, authorizing him to receive, recover and compound for the intestate's personal estate. That the appellant, in order to fulfil his agreement, relinquished a very profitable mercantile business in which he was engaged in the city of *Albany*, exposed his life to great hazard from the malignant fever which prevailed in the city of *New-York*, in the autumn of 1799, to the diseases of the

IN ERROR.
.....
ALBANY,
Feb. & March,
1810.

JAMES
v.
M'KERNON.

climate, and the danger of sea voyages to *Charleston* in *South Carolina, Savannah* in *Georgia,* and *St. Augustine* in *East Florida,* and recovered and collected of the personal estate of the intestate, to the amount of 20,601 dollars and 5 cents, which was all of the intestate's personal estate which had ever come to his possession; that he had, by the assent, or by the request and direction of the administrator, and under the agreement aforesaid, paid, applied and retained, out of the monies so collected by him, the amount of 15,555 dollars and 7 cents, of which he gave a detailed account; that he purchased the judgment of *Haley,* for 9,170 dollars, including 170 dollars, charges in effecting the purchase. The appellant admitted, that the payment had been made with the money derived from the intestate's estate, all of which, however, except 3,906 dollars and 46 cents, belonged to the appellant, and was retained by him, under the agreement. The appellant set forth a schedule of the books, vouchers, &c. relating to the intestate's personal estate, and denied that he ever refused to account; but admitted, that he refused to make any payments to the complainants, as there was a large balance due to him.

A replication having been filed, several witnesses were examined. The cause was heard in *September,* 1807, and was reheard in *December,* 1807, and in *September,* 1808, his honour, the chancellor, on the ground of legal and actual fraud in the defendant, decreed, " that the agreement set forth in the pleadings, between *Patrick Connolly, Eleanor Connolly* and *Bernard Connolly* and the appellant, be set aside ; and that it be referred to one of the masters, to take an account between the parties of all moneys, goods, chattels, rights, credits, wares, merchandises and securities for money, which were of *Michael Connolly* deceased, at the time of his death, and which have come to the hands of the defendants, or either of them, and of all moneys lawfully paid, laid

IN ERROR.
.....
ALBANY,
Feb. & March,
1810.

JAMES
v.
M'KERNON.

out and expended, by the defendants, or either of them, towards the satisfaction and discharge of the just debts owing by *Michael Connolly*, at the time of his death, to any person or persons whatsoever; and also of all just and reasonable charges and expenses which the defendants, or either of them, had been put to, in collecting, &c. And that, upon the taking of the account before the master, it should be lawful for the complainant to examine the defendants, or either of them, upon oath, touching the account," &c.

From the whole of this decree, an appeal was entered to this court.

The depositions of the witnesses taken in the court of chancery, were read; but the grounds on which the judgment of this court proceeded, renders it unnecessary to state the evidence, or the comments of the counsel upon it.

The reasons for his decree, were thus assigned by

THE CHANCELLOR. This suit was originally commenced against the defendants, by *Patrick Connolly*, the complainant's intestate, and *Michael Rawlins* and *Eleanor* his wife, all of whom are since dead. Depositions were taken in that cause, and the complainant solely revived the suit, which the parties submitted for decision. There was, however, no objection made as to the want of parties; but a wish expressed on the part of the defendants, to have an opinion on the subject of controversy, regardless of forms.

Three points were made, in the argument, as to the complainant's right, on the merits generally. When these are disposed of, others may present, as to the details.

1. Whether the complainant can be let in, to avail himself of hardship or fraud, to avoid the contract?

IN ERROR.
.....
ALBANY,
Feb. & March,
. 1810.

JAMES
v.
M'KERNON.

2. Whether it is void, as hard or fraudulent? and,

3. Whether the defendant *James*, ought to be allowed the whole amount of the judgment against the defendant *Bernard Connolly*, as administrator of *Michael Connolly*, or only the sums actually paid in their extinguishment?

The counsel for the parties, in consequence of an intimation from the court, that the construction of the contract made between the complainant's intestate and the defendant *Bernard Connolly*, as administrator of *Michael Connolly*, and the defendant *William James*, involved some doubt, united in stating, that they construed it " as extending to all the personal estate of the intestate, not at that date of the agreement in the possession of the contractors, and which they, as next of kin, or the said *Bernard*, as administrator, were entitled to."

The claim of the defendant *James*, as arising under the contract in question, appears not consonant to the ordinary money transactions of life. In his answer, he admits the receipt of 20,601 dollars and 5 cents, and states his disbursements at 14,385 dollars and 32 cents, which leaves a balance of 6,215 dollars and 73 cents.

This sum is the net proceeds saved.

Under the contract, he claims one half of $20,601  5
collected,                                   10,305 52

Deducting the above,                          6,215 73

Leaving a balance due to him of               4,089 79

The result might have been more striking, if the assets of the intestate had amounted to 10,000 dollars more, and the judgment of *Haley*, *in toto*, was properly chargeable against the administrator; for then the defendant *James* would have received upwards of 15,000 dollars, and the administrator be liable to him for a sum exceeding that amount.

This claim must stand on some impregnable ground, if it can be maintained. It appears so outrageous, at

*IN ERROR.*
.....
ALBANY,
Feb. & March,
1810.

JAMES
v.
M'KERNON.

the first blush, that, if a bill had been brought to avoid it, as produced by overreaching on the one side, and imbecility on the other, no court could possibly resist the impression, that it was palpably unreasonable, and that it was not possible that men, with their eyes open, understanding the import of the contract, could have voluntarily entered into it.

In this case, I thought, that I could not proceed on the ground of hardship, as it was not a bill to be relieved against the hardship of the bargain, as a special ground; it only came in collaterally; and though it might aid other circumstances, was not, of itself, a substantive ground to repel the right created by such bargain; nor was this one of those cases (*Barnard*, 341. 2 *Atk.* 134.) in which it might be said, that a bargain hard and unreasonable is reason sufficient why a court of equity should not give its assistance; for all the defendant *James* required was, to be permitted to retain the rights legally derived under his contract, without having them wrested from him, and not to aid in enforcing them.

Fraud is a distinct head to which the objection deduced from the forms of proceeding does not apply. It vitiates every transaction, and in all its *Protean* forms, is ever met by a court of equity, with a settled intent to frustrate its devices.

If this contract has been obtained under circumstances which legally constitute fraud, it will not be avoided; but treated as if it never existed. Its foundation is hollow and unsound, and cannot support the superstructure.

The second point, therefore, whether this contract is void, as fraudulent, requires particular examination.

The dates of the different transactions may somewhat aid in the consideration of the subject.

It appears that the intestate *Michael* died some time in the month of *August*, 1799. On the 20th or 21st of

*September*, an account of his death was received by the defendant *James*. On the 23d of *September*, letters of administration were obtained by the defendant *Bernard*. On the same day, he executed a letter of attorney to the defendant *James*, to receive and collect the debts and effects of the intestate. This was done at *Albany*, at which place it does not appear, that either *Patrick Connolly*, or *Eleanor Connolly* then were; and on the 24th day of the same month, the contract in question was entered into in *Montgomery* county.

IN ERROR.
.....
ALBANY,
Feb. & March,
1810.

JAMES
v.
MʿKERNON.

The complainant, in his bill, is silent as to the contract. The defendant *James*, in his answer, has set it up, without any other concomitant circumstance, than an explanation of the risks, inconveniences and embarrassments, which attended its execution on his part. The introductory steps which led to it, can, therefore, only be collected from the depositions of *Joseph R. Van Zandt*, a clerk in the store of the defendant *James*, at the time, and the sister-in-law of the defendant *James*, the daughter of the defendant *Bernard*, who was then at the defendant *James's* house, as a visitor. The former of these states, that one *Joseph Foster* called at the said store, and inquired for the defendant *James*, who was not then in it, and informed the witness, that the said *Michael* had died at sea, on his passage from *St. Augustine* to *New-York;* and he, at the same time, delivered to the witness a letter directed to *Bernard Connolly*, which, the witness understood, was from the governor of *New-York*, on the subject of the said death. That the witness returned the letter to *Foster*, and went with him to the defendant *James's* house, where he left him and returned to the store. That soon after, the defendant *James* came in, and the witness informed him of the death of the said *Michael Connolly*, and that *Foster* was at his house; that the defendant *James* soon after returned, and requested the witness to go over to *Green Bush*, to fetch a horse to

IN ERROR.
.....
ALBANY,
Feb. & March,
1810.

JAMES
v.
M'KERNON.

go express to *Bernard Connolly.* That upon the return of the witness with a horse, the defendant mentioned, that *Eleanor Connolly,* the daughter of *Bernard Connolly,* ought to go, as if the witness went, he would make too much disturbance about the death of the said *Michael,* and that the family would be much distressed by the news of his death; and that *Eleanor Connolly* (afterwards the wife of *Michael Rawlins*) was a sickly woman, and it would affect her too much. That *Eleanor Connolly* (the niece) might go up and tell her father privately, of the death of *Michael;* that *Eleanor* accordingly went, and the defendant *James* requested him not to tell any person of the death of the intestate *Michael.*

Eleanor Connolly deposed, that upon receiving the account of the death of *Michael Connolly, James* discovered great solicitude to conceal it from *Patrick* and *Eleanor Connolly,* his brother and sister; that *Joseph R. Van Zandt* had, at the request of the said defendant, been preparing to go to *Bernard Connolly,* to convey him the information; but that the defendant *James* observed, that it would not do to send the said *Joseph,* because he would tell every one he met of the death of the said *Michael,* and that he did not wish any person to know of it; for which purpose, he wished the witness to go and inform her father of it, to keep it a secret herself, and to desire her father to do so, and to request him to come down to *Albany* as soon as possible. That she suggested to the defendant *James,* the propriety of wearing a black veil and dark clothes; to which he objected, as exciting suspicion, and a consequent inquiry. That the defendant *James* assigned as a reason for such concealment, that he wished the said *Bernard* to administer, and not any of the rest of the family. That *Foster* wished to accompany her; but that the defendant *James* would not permit him. That she went up, made the communication to her father, and concealed it from

5

others; and that her father *Bernard Connolly*, went to
*Albany* very early in the morning after she arrived;
that a few days after, her father returned home with
the defendant *James;* that after he had been there some
time, and had had some conversation with the said
*Patrick* and *Eleanor*, afterwards the wife of *Rawlins*,
but not in the presence or hearing of the witness, the
defendant *James* produced a written paper, which was
signed by them, and attested by her; but that she did
not hear it read, or know its purport.

From these depositions, which, on all the material
parts, stand perfectly unopposed and unimpeached, it is
ascertained, that *Foster* arrived at *Albany*, with an
avowed intent to go on to the defendant *Bernard*. That
he had a letter directed to him, which, he said, was
from the governor of *New-York*. That he wished to go
on, but was stopped by the defendant *James*, who,
though of affinity to the intestate, had no pretensions
to interfere, as next of kin. It does not appear, other-
wise than from *Foster's* declaration, that the letter re-
lated to the subject of *Michael Connolly's* death, or what
became of it.

That the defendant *James* was anxious to conceal the
death of the intestate, alleging to *Van Zandt*, the alarm
it would excite, as a reason for the concealment; but to
the witness *Eleanor*, his wish that her father, who was
also his father-in-law, might administer on the estate of
*Michael* solely, was assigned as the only, and from cir-
cumstances, undoubtedly the true reason.

On the 23d of *September*, the defendant *Bernard*, re-
ceived the letters of administration, without any previous
notification to the next of kin, of equal degree, concern-
ing it, which, it seems to me, cannot be the ordinary prac-
tice of the court of probate, where there are several of
equal degree, equally entitled to the administration. On
the same day, a general letter of attorney was executed by
the administrator, to the defendant *James*. This done,

*IN ERROR.*

ALBANY,
Feb. & March,
1810.

JAMES
*v.*
M'KERNON.

they repaired together to *Montgomery* county ; and on the next day, after some conversation in private, the scope of which has not been explained, but which can only be collected from the result, a paper which was produced by the defendant *James*, which it seems from the testimony of *Eleanor Connolly*, had been prepared by the defendant *James*, was, without any hesitation, executed.

Here, certainly, was an unfair concealment ; a disposition, successfully gratified, to withhold information which the contracting parties had an equal right to participate in, as far as the evidence has disclosed it ; but probably much more might have been discovered, as to the state of affairs of *Michael Connolly*, at *New-York*, and of his effects on board of the vessel in which he died.

Independent of these circumstances, the defendant *James* could, with a degree of certainty, estimate the loss of time and expense to which the contract might expose him. A reasonable diligence was only to be exacted from him, and if he knew from *Foster*, or had any other good reason to suppose that 8 or 10,000 dollars were at *New-York*, as was the case, he had certain ground to go on, and the residue of the property in remote parts of the continent, might or might not be pursued personally, or by the agency of others, so as not to involve him in the loss of time or money, beyond an ample remuneration.

All this information the other parties were deprived of, in consequence of his intercepting it, in its way to them, and moulding it and his representations, so as to suit his purposes ; they making their bargain in the dark, and he with knowledge of circumstances calculated to convert an apparent risk, into a certain profit.

These circumstances, especially when combined with the terms of the contract, and its allowed construction, operate forcibly to bring the case within the class of such as are legally fraudulent ; and as far as art and design have been exerted to suppress information, mislead the

parties, or obscure their rights, there is an actual fraud.

The sacrifices of time, risk of life from contagion, and of long journeys or voyages, were insisted on by the defendant, as favourable to the contract, to show that the consideration on his part was weighty and valuable; but it is susceptible of a construction which I thought, under all the disclosures made, was the better one, that before he risked his person in *New-York,* if he was exposed to such imminent danger as has been represented, he had probably ascertained that the object was worth some risk and time, under present circumstances, as his movements were unusually prompt. No other source from which that information could be derived, has been presented in evidence, but *Foster,* or the letter which he brought. If this were so, and the administrator and next of kin could have satisfactorily or even imperfectly ascertained that property of *Michael Connolly,* the intestate, to the amount of 8 or 10,000 dollars, was at *New-York,* it is incredible that they could have been so entirely destitute of common sense, as to have given one half for merely receiving the other; and if there were debts due from the intestate to that amount, to have given one half of that amount out of their own pockets.

The defendant *James,* in the agreement, stipulated to *recover the whole or part* of the personal property of the intestate. He was not bound, by the terms of the contract, to pursue the intestate's property to *Florida,* nor did he proceed there until he had received a large sum of money at *New-York,* which he employed in an advantageous speculation for his own account, and had probably well ascertained that the property in *Florida* merited his personal attention on the spot, instead of intrusting it to agents.

As to the third point. The defendant *James,* by accepting the letter of attorney, was precluded from

IN ERROR.

ALBANY,
Feb. & March,
1810.

JAMES
v.
M'KERNON.

*IN ERROR.*

ALBANY,
Feb. & March,
1810.

JAMES
v.
M'KERNON.

making any advantage by means of it, for his own be-
nefit. It is an established rule in chancery, that a trustee
is never permitted to speculate for himself on the subject
of his trust; and an attorney who does so, violates his duty
as such; but the defendant *James* declared that the
purchase of *Haley's* judgment was made for the benefit
of the heirs of *Michael Connolly.*

. For these reasons, I directed an account to be taken,
. considering the contract as a fraudulent one.

*Henry*, for the appellant. The object of the appellant,
in bringing the cause to this court, is to repel the im-
putation of fraud, contained in the decree of the court
of chancery. In pronouncing that decree, the chancellor
has stated that the appellant has been guilty of an actual,
as well as a legal fraud.

But the question of fraud was never put at issue be-
tween the parties. There was no allegation of fraud in
the bill of the complainants; and they ought not, there-
fore, to have been allowed to go into proof of fraud.*

* *Bro. C. C.* 94.

No interrogatory can be filed, which does not arise from
or relate to some fact charged in the bill.† In the case
of *Clarke* v. *Fenton*,‡ depositions as to a fact not put in
issue were not allowed to be read.

† *Gilb. For. Rom.*
218. *Mitf. Pl.*
44.
‡ 11 *Ves.* jun. 240.

On a bill for the specific performance of an agree-
ment, the party must prove the agreement precisely as
it is laid.§ The depositions, therefore, which go to show
fraud, ought to have been suppressed. But we are wil-
ling to try the character of the appellant, even on these
*ex parte* depositions, and can show that there is not the
least ground for the suggestion of fraud. [Here the
counsel went into an examination of the evidence, and
the several grounds of fraud stated by the chancellor.]
Having, I trust, shown, that there was no *actual* fraud,
the next inquiry is, whether there is any legal fraud.

§ 5 *Ves.* 452.
6 *Ves.* 548.

In the case of *Chesterfield and others* v. *Jansen*,¶
Lord *Hardwicke* mentions and defines four species of
fraud, *dolus malus :* 1. Actual fraud, arising from facts

¶ 2 *Ves.* 125. 155.

·and circumstances of imposition; 2. That which is appa-
rent from the intrinsic nature and subject of the bargain
itself, of which the common law takes notice; 3. That
which may be presumed from the circumstances and
condition of the parties contracting; 4. That which may
be collected or inferred from the nature and circum-
stances of the transaction, as being an imposition and
deceit on other persons not parties to the agreement.

In this case, no actual fraud can be pretended. Is
there, then, any fraud, arising from the face of this agree-
ment? Is there any thing unreasonable or unconsciona-
ble in the bargain? The appellant left his own establish-
ed business and home, to go on distant voyages, exposed
to various hardships and dangers, and his reward was to
depend on the success of his exertions. Are the re-
spondents entitled to relief on the ground of inequality?
This is not the case of a party applying to a court of
chancery, to enforce a hard or unequal contract, and
which the court may aid or not. The contract has been
executed, and the respondent seeks to take the money
from the pocket of the appellant? Will it be said, that
this was an agreement made in ignorance and error, and
that, therefore, it ought to be avoided? But, though ig-
norance or error may be a ground for retracting, before
the performance of a contract, it will not affect a con-
tract which has been completely executed, when there is
no way of compensating the party for what he has done.*
The cases which may be cited on the other side, will be
found to be those in which there has been a payment
made, under a mistake.† Though a court of equity may
sometimes refuse to lend its aid to enforce a hard or
unequal bargain, yet it will not set it aside after it has
been executed.‡

Again, a court of equity never interferes on account
of a gross inadequacy of price, unless there is fr ; §
and there are many contracts classed under the d of
losing bargains, which will be enforced. But t court

IN ERROR.
.....
ALBANY,
Feb. & March,
1810.

JAMES
v.
M'KERNON.

* Treat.
4. 1 c. 2,
on d notes.
s.

† Ves. 126. 400.
P. Wms. 355.
Vern. 32. 2
Vern. 243. 1
Bro. C. C. 158.
2 Bro. C. C. 150.
434.

‡ 3 Wooddes. 452,
Newl. on Con-
tracts, 434.
§ Fonb. Eq. B.
1. c. 2. s. 9. note
(d).

IN ERROR.
.....
ALBANY,
Feb. & March,
1810.

JAMES
v.
M'KERNON.

of chancery will never interpose where there has been a meritorious consideration, or services performed. If the court had power to rescind the contract, would it exercise that power, under the circumstances of the case, after it has been carried into complete execution?

*Van Vechten* and *Harison*, contra. The respondent filed a bill for an account, and the appellant set up the agreement, of which there is no counterpart, in his defence. He has thereby put the fraud in issue. He is bound to show that the agreement is fair. Fraud or unfairness may always be objected to a deed; for fraud vitiates and destroys it. No objection was made to the evidence in the court below; nor was any application made to suppress the depositions. The formal objection, as to the pleadings, is now, for the first time, made. If the appellant was so solicitous to avoid the imputation of fraud, he might have waived the agreement, and disclosed all the facts; or he might have applied to the chancellor for an issue to try the question.

We contend that there is sufficient evidence to support the decree, either on the ground of actual or implied fraud, or, at least, on the ground of gross ignorance and mistake, and gross imposition. The agreement on the part of the respondents, is such a one as no man of common sense, with his eyes open, would have entered into; nor is it such an agreement as any honest man would insist upon. It is a blind and unequal bargain, against which a court of equity ought to relieve. [Here the counsel stated and commented on the facts, as they appeared in the depositions.]

A *suppressio veri*, or *suggestio falsi*, is a sufficient ground for the interference of a court of chancery.* There has clearly been a *suppressio veri* on the part of the appellant. At least, there has been a palpable and gross misapprehension, a total ignorance on the part of

* Fonb. Eq. 113.
1 Vern. 20. 1 P.
Wms. 40.

the respondents, as to the situation of the property and affairs of *Michael Connolly.**

In *Fox* v. *Mackreth*,† Mr. *Mansfield, arguendo*, says, he knows of no such term as *technical morality*, as distinguished from any other morality; but where one person has obtained an unfair advantage over another, the province of a court of equity is to give the latter redress. There was an artful and premeditated concealment on the part of the appellant, a gross inequality in the contract. The appellant was, besides, a *trustee* for all the heirs, and ought not to be allowed to make a bargain for his own benefit. Equality is essential to make a valid agreement in equity. Here is clearly a technical fraud, arising from the concealment on the part of the appellant. In *Tyrrell* v. *Hope*,‡ the master of the rolls says, " Fraud is what is done in secret, and where there is a concealment from the party in a matter which concerns his interest." The heirs were taken by surprise; they had no time to inquire into the truth of facts, or to advise with counsel; the agreement was entered into hastily and improvidently.§ Though mere inadequacy of price, or inequality, may not, of itself, be sufficient, yet, taken in connection with other circumstances, it will induce a court of equity to grant relief.¶ This is a case in which the court will imply fraud for the sake of the remedy. The fact of the appellant being a trustee, would be sufficient to set aside the agreement or purchase.** Again, this agreement is void as against creditors.††

Even if there is no fraud, yet, if the decree is right and equitable, it ought to stand, though an erroneous reason may have been assigned for it by the chancellor.

*T. A. Emmet*, in reply, repelled the imputation of fraud, with great ingenuity and eloquence.

In answer to the objection, that the setting up the

*IN ERROR.*

ALBANY,
Feb. & March,
1810.

JAMES
v.
M'KERNON.

\* 1 *Vern.* 32.  1
*Ves.* 126. 400.  2
*Atk.* 123.  2 *Bro.
C. C.* 150.  1 *Ch.
Rep.* 71.  2 *Ch.
Rep.* 173.  1 *Ch.
Cas.* 81.
† 2 *Bro. C. C.*
403. 416.

‡ 2 *Atk.* 560.

§ 2 *Bro. C. C.*
150.

¶ 2 *Ves.* 518.

\*\* 2 *Bro. C. C.*
400.
†† 1 *Ves.* 106.

IN ERROR.
.....
ALBANY,
Feb. & March,
1810.

JAMES
v.
M'KERNON.

agreement, by way of defence, put its validity in issue, he said that the appellant was not bound to offer evidence to support the deed, before it had been impeached. The complainants below knew of the agreement, and it was their duty, if they intended to do so, to have impeached it on the ground of fraud. After the answer was put in, they might have had their bill amended, so as to put the fraud in issue. The decree sets aside the agreement, though there is no allegation against it, in the pleadings. The chancellor says, he should not set it aside on the ground of hardship, because no hardship was alleged; yet he does set it aside on the ground of fraud, of which there is no allegation; because, fraud vitiates a deed, and renders it a nullity. But he does not treat the agreement as a nullity, for he sets it aside, as if it were merely voidable.

The decree removes all objections arising from any hardship, mistake, or misapprehension, for it is put altogether on the ground of fraud.

The appellant has had no opportunity to explain or disprove the facts and circumstances now made use of to support the charge of fraud.

Its being a mere blind bargain, is not a sufficient ground for setting it aside. Knowledge in the party alleged to be guilty of the fraud, of the circumstances of illusion or deception, must be proved by the party alleging the fraud, because such knowledge is essential to that species of fraud.

Again, it is said that this is a case in which the court will imply fraud, for the sake of the remedy. This sounds like a legal maxim; but, unless in the case of what are called statutable frauds, no such principle exists.

Again, it is said that the appellant, acting under a power of attorney from the heirs, is to be considered as a trustee. He was certainly not a trustee to the extent contended for. He could not act under the agree-

ment, without the power. The power was essential to give effect to the agreement. If so, the doctrine as to trustees does not apply.

IN ERROR.
.....
ALBANY,
Feb. & March,
1810.

JAMES
v.
M'KERNON.

The contract has been executed, and if it is set aside, how is the appellant to be compensated for his trouble, time, and expense, for the risk and hazard he has been at in recovering the property? What measure of recompense is to be found? It would be against every principle of justice and equity to set aside the agreement, without a compensation.

SPENCER, J. (after stating the substance of the pleadings.) In abstracting the proceedings, I have not considered it necessary to state the evidence in the case, but have contented myself with presenting the nature of the bill, its object and prayer, and the defence set up to it, by the appellant's answer. In my opinion the decree cannot be supported, if the evidence in the cause was ever so strong to prove fraud on the part of the appellant; and for this plain reason, that the court cannot afford relief not sought for by the bill, and entertain the question of fraud which is not so much as suggested by the complainant. It is an invariable and universal rule of the court of chancery to found its decrees on some matter put in issue between the parties by the bill and answer; and the rules and practice of that court require, that in framing the bill, the matter of it be plainly and succinctly alleged, with all necessary circumstances, as time, place, manner, and other incidents; and if any material facts are denied by the answer, and the complainant proceeds to substantiate the facts charged in the bill, he can put no interrogatory to witnesses that does not arise from some fact charged in the bill. It makes no difference whether the defendant has, by way of avoidance, set up a distinct and independent fact, or merely denied and thwarted the matters alleged in the bill. If the existence and verity of the fact, thus set up by a de-

*IN ERROR.*
.....
ALBANY,
Feb. & March,
1810.

JAMES
v.
M'KERNON.

fendant, be controverted, the defendant must prove it; and the complainant may examine witnesses to disprove it; but where the fact set up by a defendant is made out, either by proof or the admission of the adversary, and destroys the complainant's title to relief, it is not admissible for the complainant, after the fact is made out, to impeach it on a ground not taken in his bill, and on a ground not arising from the issue between the parties.

To apply these principles to the case before the court, we must call to mind that the bill stated only two grounds for relief: A discovery, and the amount of the personal estate of Mr. *Connolly;* that in arriving at the amount, the appellant should not make use of *Haley's* judgment, beyond the sum actually paid for procuring an assignment of it; it having, as was alleged, been purchased for the benefit of Mr. *Connolly's* heirs, and paid for by money belonging to the estate. The defence set up by the appellant was the agreement of the 24th of *September*, 1799, under which he insisted that he was accountable only for one half of the amount or value of what he had received, belonging to the estate of Mr. *Connolly*, and that he had paid, by the directions, or at the request of the administrator, out of the moneys collected, more than the half to which the complainants and the other heirs of Mr. *Connolly* were entitled. The replication put all these facts, and no others, in issue. The complainants below, had a right to show every thing they could as to the amount collected by the appellant, and for whose use *Haley's* judgment was purchased, and out of what funds. The appellant was bound to prove the execution of the agreement, and to show that there was no balance in his hands, to which the complainants were entitled. The execution of the instrument of the 24th of *September*, 1799, was put in issue, but the fact whether it was fairly or fraudulently obtained, was not put in issue. It then follows, from

*IN ERROR.*
........
ALBANY,
Feb. &March,
1810.

JAMES
v.
M'KERNON.

what has been said, that the court of chancery could give no relief as to any matter *dehors* the agreement, impeaching it, because the agreement was no further in issue than as regards its execution and import, for it is a settled and well established principle, that the relief must be agreeable to the case made by the bill, and not different from it. (*Mitf.* 34. *2 Atk.* 141. 3 *Atk.* 182. 2 *Ves.* 225.

The chancellor seemed to admit the existence of the rule as I have stated it, when he says, " that he cannot proceed on the ground of hardship, as it is not a bill to be relieved against the hardship of the bargain as a specific ground." And when he proceeds to consider the evidence of fraud in the case, he professes to do so, not for the purpose of *avoiding the contract*, but for the purpose of *treating it as if it had never existed.*

This distinction appears to me not only novel, but unsound; for it may be asked, how an agreement, solemnly entered into, and under which important rights are acquired, can be considered as never existing, unless there are extrinsic facts showing that it has been executed under circumstances which legally vitiate it. A contract must be considered void, before it can be treated as a nullity. Considering it as if it never had existed, is a consequence of its being avoided. It is not, therefore, either legal or logical to refuse interfering with the principal, to leave that undisturbed, and yet to assail a mere consequence. The amount of the chancellor's opinion is, that he cannot avoid the instrument directly; undoubtedly for the reason that the bill does not complain of the agreement as fraudulent or unfair; but though he cannot get at the agreement, in this direct way, yet he can produce that effect by listening to evidence altogether irrelevant, tending to show fraud or surprise, and by treating the agreement as if it had never existed. It did exist; and it cannot be considered as not existing, until a proceeding has intervened which shall destroy its ex-

IN ERROR.

ALBANY,
Feb. & March,
1810.

JAMES
v.
M'KERNON.

istence.    The court of chancery, therefore, has committed a manifest mistake, in taking notice of testimony irregularly and illegally taken, and in granting relief altogether different from the case made by the bill.

The proceedings in chancery, if precedents and the invariable practice of the court be adhered to, are admirably · calculated to elicit truth, whilst they guard against surprise.    The great objection in this case, to entertaining the question of fraud, is, that the appellant and his counsel must have been totally unprepared to meet that question, in the shape it presented itself.    They complain of this surprise as a serious injury to them, and they do so upon solid grounds; for no man acquainted with the proceedings in a court of equity, could foresee that witnesses were to be examined upon subjects not at all in issue; and that fraud would be made the basis of a decree, when it is not even alleged in the bill.    To suffer a decree, pronounced under such a state of pleadings to stand, would be, in my apprehension, against fundamental principles of law, and the clearest dictates of justice.

When the appellant set up the argument, if the other party had forgotten it, or if through a slip, it had been omitted in the bill, the course was plain; the complainants should have amended their bill, and then stated the facts on which they meant to impeach it; then the appellant must have answered to those facts.    It would then have been competent to have supported the allegations by proof; and had the proof been sufficient, the deed might have been avoided : but the appellant would then have proceeded with his eyes open, and defended himself in the best manner he could; but as the case now stands, he has been taken by surprise, and condemned without a chance to defend himself.

The view I have taken of the subject entitles the appellant to a reversal of the decree; and I should not take notice of the evidence, but that justice seems to re

quire it; and it may also possibly prevent further litiga-tion, to give an opinion on it.

I shall not analyze the testimony; a careful examina-tion of it has satisfied my mind, that there is no ground to say that the appellant has either committed a fraud, or drawn the respondent's intestate into a hard bargain, by overreaching him. There is no foundation for saying, that the appellant concealed any fact relative to Mr. *Connolly's* property; and it appears fully to me, that the risks which the appellant assumed, in collecting the scattered property, at his own charges, in exposing his person to dangers of no ordinary kind, and his giving up a profitable business for the express purpose of devo-ting his whole attention to the affairs of that estate, enti-tled him to an extraordinary reward. The parties have, for aught appearing to the contrary, with their eyes open, fairly fixed that compensation, and, in my judgment, they are bound by their act; for though it is true, con-trary to the expectation of all, that the debts due from the intestate have nearly swallowed up all his personal es-tate, this after fact, equally unknown to all, ought not to affect an agreement otherwise fair: but above all, the agreement having been executed, there is no possibility of yielding compensation to the appellant for his extraor-dinary services, if it be set aside; for it is impossible to ascertain the extent of the appellant's losses, in con-sequence of the agreement.

The decree must be set aside; and although there is no probability of any balance being due the respondent, the court of chancery must be directed to proceed in the cause; regarding the agreement set up by the appellant as entitling him to one half of the property or debts receiv-ed by him of the estate of *Michael Connolly.*

KENT, Ch. J. Two principal questions have been raised and argued in this cause; one, a question of law, and the other a question of fact.

The first is, whether the allegation of fraud, in pro-

IN ERROR.

ALBANY,
Feb. & March,
1810.

JAMES
v.
M'KERNON.

IN ERROR.

ALBANY,
Feb. & March,
1810.

JAMES
v.
M'KERNON.

curing the agreement, was properly in issue, and before the court of chancery : The second is, whether the evidence warrants the decree, admitting the allegation of fraud to have been properly before the court.

I shall confine myself to the first, and my opinion upon it will render it unnecessary for me to touch or examine the second point.

The good sense of pleading and the language of the books both require, that every material allegation of this kind should be put in issue by the pleadings, so that the parties may be duly apprized of the essential inquiry, and may be enabled to collect testimony, and frame interrogatories, in order to meet the question. Without the observance of this rule, the use of pleading becomes lost, and parties may be taken, at the hearing, by surprise.

If a defendant, by his plea, or answer, offered new matter, the complainant formerly used to reply specially, and the pleadings might go on, as at law, to a rebutter ; but special replications are now out of use; and the plaintiff is to be relieved according to the form of the bill. But if the complainant conceives, from any matter offered by the plea or answer, that his bill is not properly adapted to his case, he may obtain leave to amend his bill, and suit it to the defence, or he may file a supplemental bill. (*Mitf.* 19. 255.)

In the present case, the complainants, upon the coming in of the answer which set up this agreement, might have replied specially, charging the agreement to have been procured by fraud ; or (according to the more modern course) they might have applied for leave to amend their bill, and then have alleged fraud in procuring the agreement. Had this course been pursued, the question of fraud would have fairly been in issue ; and it might have been decided either upon depositions, or by a feigned issue, according to the nature of the proofs, and the sound discretion of the court below.

As the pleadings stand, I am of opinion, that the fact of fraud or no fraud in procuring that agreement, was not put in issue; and that the depositions, so far as they related to the point, ought not to have been read at the hearing. (*Clarke* v. *Turton*, 11 *Ves.* 240.)

The general rule is, that no interrogatories can be put that do not arise from some fact charged in the issue. (*Gilbert's Forum Romanum*, 218.) In *Jonhan* v. *Child*, (1 *Bro. C. C.* 94.) Lord *Thurlow* would not listen to any evidence that went to prove a deed fraudulent, because there was no allegation of fraud in the bill. It is not a sufficient answer to the objection in this case, that it must be deemed to have been waived, because not raised upon the hearing. The counsel might well have presumed, that the testimony which looked to that point would not have been taken into consideration.

I am of opinion, therefore, that so much of the decree as sets aside the agreement, be reversed; and that the residue of the decree, directing an account to be taken, be affirmed.

Such being the unanimous opinion of the court, it was, thereupon, ORDERED, ADJUDGED, and DECREED, that the decree of the court of chancery be reversed, and that the cause be remitted to that court, to the end, that an account may be taken between the parties; and that in taking such account, the agreement of the 24th of *September*, 1799, set forth in the answer of the appellant, be considered as valid and in full force.

Judgment of reversal.