Ruffin, Judge,
 

 after stating the case as above, proceeded as follows:
 

 From the shape of the pleadings in this case, the principal question arises upon the first exception of the plaintiff’s to the master’s report. That question is as to the validity of the deed of September 13th, 1824, which is brought forward in the answer of the defendant, Hawkins.
 

 The well established principle of equity, which has been repeatedly recognised by the courts of this state, is that a trustee cannot purchase the trust property directly or indirectly, at a sale made by himself, either privately or by auction. It is founded on the notion, that it exposes him to temptation, and the
 
 cestui que trust
 
 to imposition. Although no actual fraud be proved, the contract is invalid by reason of the danger of fraud. The same policy forbids a trustee from dealing in in-cumbrances on the trust estates. His situation opens sources of information to him, of the value of the estate, the necessities of his
 
 cestui que trust,
 
 and his capacity for encountering difficulties and clearing away the in-cumbrances, or his disposition to submit to hard terms for obtaining indulgence, or making satisfaction of them. Besides most commonly, the trustee has in his own hands the funds, out of which they are to be satisfied, and the profit which is made on such purchases, should enure to the owner of the fund, which in fact causes the gain. A familiar instance of this is the purchase of a debt of the testator by the executor ; he can hold it as a security only for what he paid ; and this as well against creditors,
 
 *208
 
 as legatees. This principle lias been extended to every case which comes within the reason of it, and to all persons standing in a confidential relation to the fund» He. who by contract, or the course of this court, is charged with the interests of others, and therefore bound to protect and advance them as far as he honestly can, shall not be allowed to speculate either, upon those interests, or in any thing else, at their expense. Hence, solicitors, agents, stewards, and guardians, as being in the nature of trustees, are forbidden, as well as executors and express trustees, from buying the estate, or buying for their own benefit, any charge upon it. This doctrine is so well settled, as to need no reference to authority.
 

 Audit extends
 
 to
 
 all persons Standing' in a fiduciary relation to the estate.
 

 Bargains between trustee &
 
 cestui gut trust,
 
 are not void— but they are viewed with great jealousy.
 

 If they result from the connex-ion, they cannot be sustained.
 

 The prohibition of the trustee to purchase from the
 
 cestui que trust
 
 himself, is not found to be so absolute.' There are cases in which contracts between them have been supported. But the same danger that has induced courts to declare their transactions of the nature just mentioned to be void, has imposed restrictions upon the power of contracting with the
 
 cestui que trust,
 
 which, in effect, almost extinguishes it. Bargains between them are viewed with anxious jealousy. It must appear, that the relation has ceased, at least that all necessity for activity in the trust has terminated, so that the trustee and
 
 cestui que trust
 
 are two persons, éach at liberty, without the concurrence of the other, to consult his own interest, and capable of vindicating it; or that there was a contract definitively made, the terms and effect of which were clearly understood, and that there was no fraud or misapprehension, and no advantage taken by the trustee, of the distresses or ignorance of the other party. The purchase must also be fair and reasonable.
 
 (Coles
 
 v.
 
 Trecotrick.
 
 9
 
 Ves.
 
 246.
 
 Fox
 
 v.
 
 Macreath,
 
 2
 
 Bro. C. C.
 
 400.) These cases are not allowed to turn on nice enquiries, whether it might not possibly be for the benefit of the
 
 cestui que trust
 
 to make that particular contract rather than none at all; but when there is a fair judicial doubt, as some of the cases express it, whether the trustee has not availed himself of his confidential situation to obtain selfish advantages..
 
 *209
 
 the contract cannot stand.
 
 (Ormond
 
 v.
 
 Hutchinson,
 
 16
 
 Ves. 107.)
 
 In other cases the chancellors have said, that the trustee must shew demonstratively, that he had given the
 
 cestui que trust
 
 the advice he ought? were a third person in treaty ; that he dealt with himself as he would with a third person, and did not take a bargain, which he would not have advised his
 
 cestui que trust
 
 to make with another, or it cannot he supported,
 
 Dunbar
 
 v.
 
 Tredennick,
 
 2
 
 Ball.
 
 &
 
 Beat.
 
 314.) Were it to appear, that the transaction was the effect of the free and uninfluenced judgment of the principal or
 
 cestui que trust,
 
 J , 1 with a perfect knowledge of all the circumstances and consequences, gained from the communications of the agent, yet it will remain to inquire how that judgment and intention were produced, and whether it was not the effect of pecuniary necessity, of the knowledge of which the trustee was availing himself.
 
 (Hugonin
 
 v.
 
 Basely,
 
 14,
 
 Ves.
 
 300.) When it is said therefore, that a contract between the trustee and
 
 cestui qae trust
 
 is not
 
 per se
 
 void, but may be made under these restrictions ; it is hardly taking a step. For it is requiring us to change our natures. It is telling than that he must go out of himself, and in making a bargain must gain nothing, which amounts nearly to a total prohibition. Yet less would certainly not do ; for it would leave the helpless a prey to those whose duty it was to protect them.
 

 ,a sille
 
 cestui que trust
 
 to trustee be the bhsseclVudg-1111" mentof the'for-judgment was cuniary distress uíustee^availed himself,
 

 There will, with the aid of these authorities, be little hesitation in the mind of any, how the court is obliged to deal with the contract in question. The defendant by the deed of 2nd of July, became the assignee for
 
 Richard Boyd,
 
 of the security created for him by his brother, in the deed to
 
 Rainny
 
 of the 11th of June preceding,— On the 8th of July, upon the defendant’s own proposition, he was also invested with the legal title in those estates, by a deed from
 
 Rainny
 
 in which the
 
 Boyds
 
 joined. He says he accepted this last trust, because
 
 R. Boyd
 
 was altogether unable to manage his own interests, had no credit, and had left the county of Mecklenburg, or, as
 
 J.
 
 ?/,
 
 Hawkins
 
 proves, had fled in dismay: and because ■great energy was required to conduct it, which the ori
 
 *210
 
 ginal trustees would not exert.
 
 Hawkins
 
 then understood perfectly, when he assumed this relation to the plaintiff, the nature of the task he imposed on himself; and indeed the vast importance to
 
 Boyd
 
 of a correct discharge of them formed, he says, his inducement. "When the agreement of September 13th was entered into, those functions had not been performed ; they were in the height of their execution. The answer itself, states that the object of
 
 Boyd
 
 in executing it, was to add the inducement of interest, to excite the defendant to greater activity. In another part, to buy his efforts. No price is given by
 
 Hawkins
 
 but those efforts ; none else pretended in the deed itself, throughout its long recital, except the purchase
 
 ot Brown’s
 
 judgment. So far then, was this contract for one-fourth of the trust fund from being made by a trustee, after the trust had been executed, or who had in this purchase, divested himself of the character of trustee, that the purpose and consideration of it, was to get the trustee to go on, and execute the trusts undertaken by him. . Can a court of justice permit a man who has become a trustee, and in that character caused various other conveyances to be made to him, so that the titles to very large estates, and all the estates of his
 
 cestui que trust
 
 are concentred in him, and within his power, then to say to his
 
 cestui que trust,
 
 you shall give me a fourth part of the whole, or I will proceed no farther? But this is uot an ordinary trust, where the whole interest was in
 
 Boyd, so
 
 that he might call upon
 
 Hawkins to convey
 
 to him, or to another trustee: it was nota nominal estate for the use of
 
 Boyd
 
 merely.
 
 Hawkins
 
 was not only
 
 Boyd’s
 
 trustee, but that of the bank also, and charged with its interest, and
 
 Boyd
 
 could not remove him without a dilatory litigation, which would have exposed him to ruin. Can such a trustee avail himself of his advantages of trustee, and superadd thereto the powers and influence of the creditor, and demand such a conveyance as the price of his aid, either in the way of Services or of mercy? Can it be permitted that a trustee should derive any benefit from such a conveyance, made by his
 
 *211
 

 cestui que trust
 
 in distress, embarrassed, incompetent to business, apprehensive of great loss, and of eventual insolvency, when he was confiding in the friendship and ability of the trustee — and moreover ignorant of the value of what he was giving? If it could be sustained, there are no checks worth regarding, to the unlimited demands of those wiio have the care of other’s affairs, even should their situation also give them power over 1 them. The value of these estates, as claimed by the defendant, was in truth near g 40,000
 
 ;
 
 they realized that * sum in about two years. Did
 
 Boyd
 
 have any just information upon that subject? So little did he know, or so incapable was he of judging, that the defendant himself says it was much doubted by
 
 Boyd,
 
 whether they were worth pursuing ; and at one time, he told
 
 J. W. Hawkins
 
 he would give all up, and rely on his own estate; and at another, expressed great expectations. Such was the state of his mind, that it is obvious he threw himself into the custody and ward of the defendant, and was ready to do whatever 'he was required, or whatever he thought would be deemed a compensation, for the magnified services of his friend. He offered one half. Why did not
 
 Hawkins
 
 take that? It would have had the same ground to stand on, which this has, the offer and willingness of
 
 Boyd.
 
 The answer does not state the reason, but leaves us to infer that it was either generously declined, altho’ merited, or that it was deemed too large, and that the defendant was only willing to receive adequate remuneration. But upon the score of contract, each would have been alike obligatory, and each is open to be impeached upon the ground of unfairness, unreasonableness, and advantage taken by one man, of another in his power.
 

 
 *210
 
 A sale by the
 
 cestui que trust
 
 to the trastee, made while the connexion existed, the consideration of which was a discharge of duty by the trustee, cannot be supported.
 

 Especially where the trustee was one for sale,imposed upon the
 
 cestui que trust
 
 by his creditor, having all the influence of (he latter.
 

 
 *211
 
 ¿nd where rant ofthe value pfthe estate sold m distress, and confided in the friendship ofthe trustee.
 

 In this state,tras-t^nothing^but their expenses,
 

 But it has been insisted, that trustees are in this state entitled to compensation, and as none was provided for by the deed, it was a fair subject of treaty and adjustment, and in that light, good. The court does not understand that trustees are entitled to have more than their expenses. The contrary, is the old rule of the court of equity ; and no opinion has been given against it in this
 
 *212
 
 state, as far as wo know. Nor does the court see a reason to adopt a now rule. As far as the operation of the statutes allowing compensation to administrators and guardians, has been observed,it is thought far from being salutary. It makes those offices objects sought after and contested for ; and it requires the courts to hold persons in those trusts, to stricter account. If it be established that a trustee is entitled to compensation, it follows that
 
 bonajides
 
 will not excuse him, but he must answer for his acts as a paid man, and such changes we are not prepared to make. The farthest we can go is, to permit a stipulation for compensation at the contracting of the relation
 
 ;
 
 and then, not in a case, where the trustee to sell, is imposed on the debtor. If it be arranged pending the trust, it can only be taken as evidence that the parties did not intend gratuitous service, and the measure will be disregarded, and fixed at what is deemed reasonable by the court. Any other doctrine, would subvert the whole law of this court, upon contracts between these.partiesfor instead of buying, the trustee would take what he pleased of the estate, without price, under the name of compensation, and every abuse would follow. The case in this respect then, stands on the fairness of the measure of compensation ; and upon that there cannot be a moment’s doubt, when it is seen to be •near g 10,000, for a portion of two year’s attention, without the defendant being one cent out of pocket, or risking one penny of his money. Instead of serving this distressed man, it would be plundering him, as by the terms of the agreement, the defendant is to have one fourth of •the gross estate. Every expense is to be borne by
 
 Boyd,
 
 -even that of carrying the crop to market, altiio’
 
 Hawkins
 
 shares in the increased price; and
 
 Brown's
 
 judgment is to be paid by
 
 Boyd
 
 out of his residue. Thus
 
 Boyd's
 
 interest is to satisfy incumbrances to the amount of eleven or twelve thousand dollars, and
 
 Hawkins
 
 none ; which, in effect, nearly gives the latter the half, which his own conscience had once rejected.
 

 A stipulation for compensation made when the relation was contracted, will be supported un less the trustee be one for sale, nominated by tine creditor.
 

 If subsequently arranged, it is only evidence that gratuitous services were not intended, & will not be regarded a a mea sure for its allowance.
 

 But it is not true, that this was an adjustment of compensation for services. It is true, that it was an arrange-
 
 *213
 
 merit to determine
 
 Haxvkins'>
 
 gains, and that they are called compensation in the agreement. But services under the deed were not alone, or principally, in the contemplation of the parties. They are anxiously recited in the deed, and in a way to magnify them. But the principal service then claimed, and that which prevailed on
 
 Boyd
 
 to make such astonishing offers to the defendant, was the purchase of
 
 Brown's
 
 judgment and giving up the benefit of it to
 
 Boyd.
 
 The answer claims the exclusive ownership of it to be in the defendant; because be says he bought it with his own money, and without advice or indemnity from
 
 Boyd,
 
 or having any of his funds. This may be true in fact, but in this court, the purchase of the judgment enured to the benefit of the fund, which was bound, and was .sufficient to discharge it. That judgment belonged to
 
 Boyd
 
 the instant
 
 Hawkins
 
 purchased it, and stood only as a security to him for what he gave for it. What did he give? Not a cent of his own money, but his bond, which has been satisfied out of the trust fund, or by Boyd.
 
 Hawkins
 
 has never „, . , , . . paid any thing out ot ms own pocket, never been in advance for
 
 Boyd;
 
 not even as alleged in his answer, ex-
 
 J
 
 ° cept as it is therein stated, that he advanced that which belonged to him under this very agreement, which, in that sense, he calls his own. Nor did he incur any responsibility ; for the judgment was. against the two
 
 Boyds
 
 and three others, and execution was actually levied on much more than satisfied it, and ultimately yielded upwards of gif,000. This extra service in buying, and extra kindness in transferring the benefit of the judgment, (which here is taken to be but the discharge of a known duty,) is exaggerated in the instrument itself, into a principal reason, why
 
 Boyd
 
 should give the other a fourth of the estate, and out of the residue pay the judgment itself, and all the expense of securing the whole. That such is the true character of the transaction, is deducihle, not only from its face and circumstances, but it is expressly admitted in the answer, that
 
 Boyd
 
 executed it “
 
 especially
 
 in consideration that the
 
 “
 
 defendant, after making the profitable speculation on
 
 *214
 
 «
 
 Brown’s
 
 judgment, had
 
 voluntarily
 
 given
 
 Boyd
 
 the
 
 “
 
 benefit of it.” Cam one doubt, eithex' that
 
 Boyd
 
 was altogethei’ deluded into the belief that the judgment really was'the property of
 
 Hawkins,
 
 and not his own, or that knowing it to be his, he was constrained to treat it as
 
 Hawkins’,
 
 from the apprehension that a person who put up such a claim, and had him in his power, would use that power so as to serve himself as effectually in some other way?
 

 
 *213
 
 The purchaser by a trustee of estate, enures to sale of one-tate> consiae-1-at!on the trustee will surrender the judgment,ismadeby
 
 mfv> q ic fruit,
 
 ;n ignorance
 
 oS
 
 llls
 

 
 *214
 
 As to the other responsibilities incurred by
 
 Hawkins,
 
 in becoming the surety of
 
 Boyd,
 
 and indemnifying his co-trustee, they are perfectly imaginary ;
 
 R. Boyd’s
 
 own estate was, and has been, proved to be an ample counter security, without any aid from
 
 Alexander’s.
 
 Every responsibility is discharged, and eighty negroes and half of his Roanoke estate left; and although it be said that at that time he was willing to take half price for it, and expected insolvency in that event, yet his willingness to make that sacrifice, is no very satisfactory evidence that he was capable or careful, in dealing with his own trustee, for the uncertain interests under his brother’s assignments. The very facts, that from his want of judgment or his agitations and distresses, he estimated Ixis own resources so inadequately, and exaggerated so greatly the responsibilities incurred for him by the defendant, or from the same causes, that the services of the defendant were really indispensable to
 
 Boyd;
 
 he being incompetent to the management of such ordinary concerns, though sustained by his large means; made it unconscientious and inequitable, according to the rule of this court, to exact or to receive such a donation from him.- Accordingly, we find it stated in the answer by way of reproach to
 
 Boyd,
 
 that as soon as his affairs became prosperous, he refused to comply with the demand of
 
 Hawkins;
 
 in plain words, when he became able to think for himself, and got clear of the terror of his trustee, and of insolvency, he was sensible of the enormity of the exactions, and resisted them, although he offered, and now submits to do, whatever may be thought reasonable.
 

 
 *215
 
 And such a f.ale macie ,wlien the
 
 cestui que trust
 
 was inpe. feSfof thesi’ nister influence mistaken estimates of his be* supported"0*
 

 And a subse.
 
 thecestuiq’uetrust
 
 ,cnew t'N the hrst was invalid, and intended the a con“
 

 Where a deedis pleaded, or only stated in the an. ^relfef 'with* out having’ bee® mentioned in
 
 *216
 
 the bill, the replication puts only its execution in issue, and it cannot be impeached by proof of collateral facts.
 

 
 *215
 
 The conclusion of the court is, that regarding the relation of the parties, the considerations moving them, and the purposes in view, the actual pecuniary difficulties of
 
 Boyd,
 
 magnified by his alarm, his ignorance of his rights, or his constraint from asserting them, and the extrava-a;ant estimates of the services and responsibilities of the °
 
 x t
 
 defendant
 
 Hawkins,
 
 and exorbitant claim of compensation for them, the agreement of 13th of September cannot be treated here as obligatory, and as a discharge of
 
 Hawkins
 
 from accounting for the trust fund, or to found any charge on his part against
 
 Boyd.
 

 As to the idea of a confirmation by the deeds executed in October and December, it will not bear stating. The confirmation is not direct, but only by inference. But if it were, the same objections existed then to such a contract, as did in September. And to make an ex--1 ... press confirmation of a void contract avail any thing, it surely must appear that the parly was then aware of his rights, and knew the first transaction, at least was impeachable, and meant to make that valid,' which he did not before consider so. In any other sense the new deed is but a new imposition.
 
 (Lord Chesterfield
 
 v.
 
 Jansen,
 
 2
 
 Ves.
 
 146.)
 

 It has been, however, strongly urged, that the validity of the agreement is notin issue; because it is not impeached in the bill, and therefore that the sole question is, as to its execution. It is certainly true that no decree can be founded on a fact not in issue ; and that generally, it is safest to bring forward in the bill, all matters' in avoidance of a deed which the defendant means to use. It formerly was the course to do it by a special replication, but in more modern times the practice is, to charge the facts in the bill originally, or to do it by amendment, which the court always allows, when the deed is first stated in the answer, without its attending circumstances. If areleascbebarely pleaded or stated in ... . , the answer, and relied on simply as a release, it cannot bo impeached by collateral matter, as having been unfairly obtained. So in the case of
 
 James
 
 v.
 
 McKernon,
 
 (6
 
 John. Rep.
 
 543) cited for the defendant, where the defendant re
 
 *216
 
 lied in his answer, on the agreement as such, upon the mere fact of existence and its import, and there was nothing on the fare of it, to invalidate it, it was properly held that evidence could not be heard to impeach it, upon the ground that it was obtained by fraudulent misrepresentations, or was otherwise unconscientious. Neither the. bill nor the answer contained any matter to which the proof was applicable, and therefore it would be a surprise to the other party, and the witnesses not guilty of perjury if they swore falsely. But it is not necessary that the facts upon which the validity of the deed depend, should be- put in issue in any particular part of the pleadings, as in the bill, or by a special replication! It is sufficient if the issue is formed any where in the record. If the answer state the deed not only as existing, hut also the circumstances which are relied on as giving it validity, and insist upon it as a fair deed freely given, claiming the benefit of it as an executory agreement, which the court ought to execute by reason of the considerations upon which it is alleged to haie been founded, and the purposes for which it was given ; if also the deed be. exhibited with, and made a part of the answer, and upon its face contains recitals, which were meant to give a colour to and sustain it ; moreover, if the defendant sets up under this deed, not a discharge barely» ■ but a satisfaction of the demands made on him in the hill, and also an original charge against the plaintiff: surely, a general replication to the answer puts in issue,as directly as can be. every circumstance specially sta- ' ted in support of the deed, the general affirmations that it was fair and voluntary, and also the facts recited in - the deed itself. All this is necessarily as much in issue • by a general denial of the truth of all that is in the an- • swer, as is the execution of the deed. In the present case no fact is in proof, which does not directly admit or deny some allegation of the answer : and the. defendant. himself insists in the answer, that the cause shall be tried on the merits, and he assisted upon the footing of the agreement being valid • under the circumstances disclosed by him.
 

 But it is otherwise where the deed with all its attending’ circumstances is set forth in the answer, and is made the foundation of a charge against the plaintiff.
 

 
 *217
 
 At the hearing a deed thus bro’t forward is not decreed to be cancelled, because relief of that kind is not sought, not because it was not in issue.
 

 But there is in truth no necessity of resorting to testimony for the ground on which the court decreed.— The matters are confessed in the answer, and the plaintiff, as to the operation of that deed, might have sot down the case on the bill and answer, and so the objection of surprise cannot arise. It is like a defendant claiming a set off upon a bond admitted in the answer, or stated on its face to be- usurious. The court could not decree in favor of it, if the other party objected ; and so here the defendant can found no claim on this instrument. It is true it cannot be declared void and ordered to be given up ; but that is not because it is not in issue, but because the plaintiff has not in any part of his pleading asked such relief against it. It is simply repelled here. The case is like the common one of a vendor bringing a bill against a purchaser for specific performance, which the court refuses on equitable circumstances, but cannot cancel the articles, until the purchaser files his bill for that purpose. The court must therefore allow the complainant’s exception, to so much of the report as is founded on the interests supposed to be derived by
 
 Hawkins
 
 under this agreement.
 

 The question remains, what decree the complainant is entitled to? The bill is confined in its charges to the deed of trust for
 
 Boyd’s
 
 estates in North-Carolina, and sets out as a reason for not charging any matter relating to the Virginia deed, that a suit is pending in that state for an account under it. But the bill prays for a conveyance of the North-Carolina property and for general relief. This prayer necessarily involves a general account of the whole trust fund j because the plaintiff cannot have even the specific relief prayed for, until all the debts are paid, and his trustees indemnified upon the whole transaction, as they had a right to look to all parts of the property for their outlays, as well as for the debt to the bank. Such an account has been taken ; and the defendant insists in his answer upon a full account, and that the whole controversy ought to be settled here, notwithstanding the suit in Virginia. The pendency of that suit is nut considered an obstacle to a fuli investigation here, as it does not appear
 
 *218
 
 that any rights have been determined in it; for the decrees cannot come in conflict, and the parties here being under the control of this court, can be made to dispose of that suit as may be deemed right. Both cannot be carried on together, and the court would put the parties to an election, if they liad not already made one; the defendant in his answer, and the plaintiff by asking for a general account, and bringing Ibis cause to a hearing upon the whole merits. Besides, the plaintiffs
 
 Thornton
 
 and
 
 Davison
 
 are not parties to the suit in Virginia, and have no rights in the fund in litigation there, but are subsequent mortgagees of the North-Carolina property conveyed in the first deed of 2nd July; and they have a right to a conveyance, if it appear that upon taking the accounts, all the prior incumbrances upon it are discharged.
 

 A doubt has been entertained by the court, upon the propriety of making a decree in favour of
 
 R. Boyd
 
 alone, for the balance appearing by the accounts to be due to him; which arises from the silence of the bill respecting the assignments
 
 oí Alexander .Boyd,
 
 and the re-assignment thereof by
 
 R. Boyd,
 
 out of which grew the principal part of the funds in the defendant’s hands. But it does not appear by any proof, nor by the full statement of all the transactions given in the answer, that any part of that trust property remains specifically, or that the titles of it, if there be such, are now vested in Hawkins, or that
 
 Boyd
 
 lias any ground of relief against him touching it; or
 
 Hawkins
 
 a demand on his part in respect of it, except that set up under the agreement, which has not been sanctioned by the court. It results that no controversy exists upon that subject, but that involved in the accounts of the receipts, disbursements and charges of the trustees. Those accounts have been taken in this cause, and were necessarily taken; no objection is perceived in this state of the case, to proceeding to a final decree upon the whole merits, care being taken to prevent the parties from further harassing each other in Virginia, by an order on them to dismiss that suit, which must be at the costs of the plaintiff, whose fault it was,
 
 *219
 
 not to include all the subjects in one bill; and care being further taken by an order to that effect, that this decree shall not prejudice any other suit by
 
 Boyd,
 
 or of an amendment to his present one, if he chooses it, by which he may seek a conveyance of the legal title of any property vested in
 
 Hawkins
 
 and Robarás, or either of them, by any of the conveyances mentioned in the pleadings, or the exhibits ; or by which he may seek to' have the agreement of September 13th, 1824, declared void and cancelled. It is the object of the court not to conclude any of the parties as to the matters not fully tried and determined in this
 
 suit;
 
 and it is equally our object finally to settle all the matters of controversy, of which the merits arc fully before us. Such is the fact in relation to the balance of monies arising out of the whole trust. The creditor is satisfied, and admits it by answer ; the defendant
 
 Robarás,
 
 never has set up any demand, and disclaims it in his answer; the defendant
 
 Hawkins,
 
 has rendered an account current of his whole trust, and detailed statements of it have been reported by the master, including even the expenses of the suits with
 
 Hunt
 
 and
 
 Goode,
 
 to no part of which has he excepted, save that of the allowance of commissions on the payments to the bank 5 and no exception is taken by
 
 Boyd
 
 to any omission by the master to charge
 
 Hawkins,
 
 but only to some of his credits. It must be assumed then, that the matter of account need not be longer kept open, and may now be finally adjusted upon the basis of the report, as corrected by the court, in the
 
 decree;
 
 and therefore, that it is proper that the cause should now proceed to a decree on that part of it.
 

 By the report, the sum of S2,905 16 appears (after disallowing the claims under the deed of September 13th,) to be in the hands of the defendant
 
 Hawkins,
 
 and to have been there, or nearly all of it since the year 1823 j and but few disbursements have been made since 1826. For this sum therefore, and interest on it,
 
 Hawkins
 
 is the debtor of
 
 Boyd,
 
 subject to such deductions as shall be made for his. compensation.
 

 
 *220
 
 Upon this subject we have had some difficulty. It is not thought justifiable to allow any thing as a commission ; because if a trustee can receive compensation at all, it must be for his actual time and labor, and not by any arbitrary rule of commission, if not specified from the first. For this reason, the seventh exception of the plaintiff to the allowance for the' sales of the Noctli-Ca-rolina property, is sustained, and the defendant’s overruled, But the opinion of the court is, that
 
 Hawkins
 
 is entitled in this case, to compensation for his time and labor, as well as the expenses with which he has been credited. This opinion has been founded upon the clear understanding at the origin of the business, that lie should receive it: for-which there is a stipulation in. one of the deeds, and upon the express submission in the bill to allow a reasonable compensation. The trust was troublesome and at a distance from the residence of the parlies ; it required an active agent to manage it; and
 
 Boyd
 
 seemed to have liad more confidence in the zeal and skill of this genrleman than any other, and probably would have been unwilling that
 
 Hawkins
 
 should, as he had a right to do, substitute the services of another agent for his own. The duties expected, nay required, were beyond the ordinary ones of a trustee, and involved the necessity of personal interposition, in instances when perhaps no other agent could have served the same purpose. Ingeneral, the trustee can act by an agent; and.it is best ho should, because he will be under no temptation to pay him too much, though he is under the strongest to demand it for himself. But where that would not answer the purposes of tiie trust, nor satisfy the
 
 ces-tui que
 
 trust, and the trustee has been faithful, and the
 
 cestui que trust
 
 submits to what is reasonable, the court does not think it an improper precede.it, to allow what the trustee might have fairly given to another competent person. In this case we think $750 per annum would have engaged such an agent, for the parts of the two years, during which
 
 Hawkins
 
 was actually occupied in tins
 
 business;
 
 and the court allows the sum, namely
 
 ¶>
 
 1,500 in the whole, by way of remuneration
 
 *221
 
 for all his services touching the whole trust. For the residue of the g 2905 Ki, and for all the costs of this suit, there must be a decree in favor of the plaintiff
 
 Boyd.
 

 Per Curiam. — Decree accordxngey.