## RICHARDSON v. BARRICK.

1. CONSTRUCTION OF CONTRACTS IN EQUITY. A court of equity will ascertain the true character of contracts, and enforce them without reference to the forms and technicalities which surround them.

2 MORTGAGE. A transaction involving a conveyance of real estate to secure the repayment of money loaned, in equity, is a mortgage from which the equity of redemption is inseparable.

3. CONTRACTS: ENFORCEMENT: ADVANTAGE. When a contract is supported by an inadequate consideration, and was executed under circumstances which show that advantage has been taken by one party of the distress of the other, a court of equity will ascertain its real character, notwithstanding such advantage may not amount to either a moral fraud or a duress, and will enforce it to this extent.

*Appeal from Bremer District Court.*

### FRIDAY, JUNE 17.

ON the 5th day of January, 1850, the defendant procured John M. McDonald to enter on time for him one hundred and sixty-two 68-100 acres of land, in section seven, township eighty-nine, range thirteen west. The defendant furnished a small portion of the entrance price at the time, and gave two notes, one for fifty-five dollars,

and the other for one hundred dollars, both payable July 5th, 1850, and took a lease and agreement for sale, both in one instrument, to which were annexed conditions of forfeiture of the "strictest sect." This contract was extended first to January 18th, 1851, and afterwards to February 18th, 1851, at which last date the amount to be paid was two hundred and three dollars and fifty cents.

On the 17th day of February, 1851, the defendant procured of the plaintiff, two hundred dollars, with which he paid the amount due McDonald, and caused him to convey the land by deed of quit-claim to plaintiff; the defendant executed to plaintiff his note of the same date for two hundred and seventy-two dollars, payable in one year, and took from plaintiff his bond for title by quit-claim to said land, upon condition that defendant should pay all taxes, and the note when due, "but should the taxes and note *not* be paid when due, then I reserve the right to sell the above described land at any time, to any person or persons." This transaction is stated by the plaintiff in his sworn pleadings, to be a purchase of the land by him of McDonald, and a contract of sale to defendant, while the defendant in his like pleadings states the same transaction to be a borrowing of money and a securing of its payment.

The defendant did not pay the note when due, but did pay the taxes for all years except 1854 and 1855, and in 1853 or 1854 left with one Rozelle a hundred dollars for plaintiff which he declined receiving, and afterwards, and in 1855, the defendant went to the plaintiff with a bag of gold, containing twelve hundred dollars, and offered to pay the whole amount due him, which he also refused to receive.

In March, 1857, Barrick brought his suit against Richardson, in the Black Hawk County District Court, to compel Richardson to accept the money and convey the land according to his bond. Richardson filed his answer, deny-

ing that it was a loan, and claiming that it was a sale, upon condition of payment of contract price, when due, which was not done, and that the contract was, therefore, at an end, and null. This cause was continued for one or two terms, and in August, 1857, while it was pending, Richardson, together with his attorney, went to the house of Barrick and stayed all night with him. During their stay, and before they left next morning, an agreement was made, whereby Barrick was to pay Richardson three thousand dollars, in American gold, within ten days, and Richardson was to convey the land, by quit-claim, to Barrick. At the expiration of the ten days, Barrick, finding himself unable to procure the gold to pay as agreed, sent his son to the plaintiff with a letter, asking him to accept, instead of the money, a note for three thousand dollars, signed by Barrick, payable to Richardson in sixty days, secured by an absolute conveyance, by Barrick and wife, of his home-farm, situated in section thirty-one, township ninety-one, range thirteen, together with sixty dollars cash, to pay interest, all of which accompanied the letter which requested a conveyance of the land first above described. Richardson accepted the note, conveyance and money, and returned a quit-claim deed of the land, as requested, and then canceled the note for $272, originally taken from Barrick.

This suit is brought to foreclose that conveyance as a mortgage.

It also appears that Barrick, after the entry of the land for him, had sold portions of it to different persons, receiving part of the consideration, and giving his bonds for the conveyance of the portions so sold, the penalties of which bonds exceeded the amount agreed to be paid Richardson, and upon one or more of them suits had been brought and were then pending.

The District Court rendered a decree in favor of plaintiff

for $487.23, that being the amount of the $272 note and interest, and for costs, from which plaintiff appeals.

*Bissell & Shiras* for the appellant.

*B. W. Poor* for the appellee.

COLE, J.—It has ever been the pleasure, as it has been the duty and special province of courts of equity, to disrobe transactions of their garbs of verbiage, technicalities and special contrivances adopted to conceal their real nature, or to entrap the weak, the unlearned or oppressed, and to discover the true character of the transaction and enforce it as it really is, regardless of the forms with which cunning and artifice may have surrounded it.

Notwithstanding the acumen which may have been manifested in making or drawing the several contracts and agreements in relation to the entry, leasing, sale, and resale of the land specified, it is impossible to resist the conclusion, that the transaction in relation to it with McDonald as well as with the plaintiff, Richardson, was simply the loaning of money and the securing of its repayment. Such contracts and agreements then were in equity a mortgage, and it is an universal rule in equity that once a mortgage, always a mortgage, and that the equity of redemption is inseparable from it, and every attempt to limit or defeat that right must fail. *Holdridge* v. *Gillespie*, 2 Johns. Ch., 30; *Clarke, &c.,* v. *Henry,* 2 Cow., 324; *Seton* v. *Slade,* 7 Vesey, jr., 273; *Henry* v. *Davis, &c.,* 7 Johns. Ch., 40.

It is claimed, in argument, however, by the plaintiff's counsel, that there was a voluntary abandonment of the original contract between plaintiff and defendant, whereby the whole previous arrangements between them were canceled, in consideration of the compromise of the suit brought by Barrick against Richardson; and that thereupon plaintiff sold to defendant the land at three thousand dollars,

and gave the deed or mortgage in controversy to secure the payment of the purchase-money. There is some indefinite testimony by plaintiff, that the compromise of the suit was the consideration in part for the agreement. The compromise of a doubtful title, when procured without such deceit as would vitiate any other contract, is a sufficient consideration to support a promise. But this fact of compromise, even if proved, could not, in this case, help the plaintiff, since he has not, in his pleadings, made any such issue, nor even the remotest allusion to the fact of compromise, or that his right to recover the amount claimed by him was based upon such consideration. And the rule is well stated in *James* v. *McKennon*, 6 Johns., 564, to be, that "every material allegation should be put in issue by the pleadings, so that the parties may be duly apprised of the essential inquiry, and may be enabled to collect testimony and frame interrogations, in order to meet the question."

And in the case of *Stewart* v. *The Mechanics' and Farmers' Bank*, 19 Johns., 505, it is laid down, as an undeniable principle, that the decree of a court of equity must be founded upon some matter put in issue between the parties. It is bound to decide according to the allegations and proofs, as much as a court of law.

So far, then, as the allegations of the pleadings are concerned, there is no foundation for the claim made by plaintiff's counsel in argument, that the compromise of the suit by this defendant, against this plaintiff, formed a part of the consideration for the mortgage, sought to be foreclosed in this case. Indeed it would be a peculiar claim to make upon the record, that this defendant, in consideration of the privilege of dismissing a well founded cause of action (as appears by the proof in this case) against this plaintiff, agreed to pay him three thousand dollars. Without deciding whether *such* a compromise could be held a valid consid-

eration for a promise, it is sufficient for this case that there is no such issue, and hence no such question to determine.

The case stands then upon the naked proposition, whether the cancellation of a note for two hundred and seventy-two dollars, secured by an absolute deed, in the nature of a mortgage, is a sufficient consideration to support another note for three thousand dollars, also secured by an absolute deed of the same nature? The plaintiff comes into a court of equity, and asks the enforcement of this new contract by a foreclosure of the absolute deed as a mortgage, and a sale of the property to satisfy the note. It is too evident, from the conceded facts in this case, that the defendant has been induced to enter into the contract sued on under such circumstances as ought in equity to discharge him from its performance. The testimony does not give a full or satisfactory account of the motives, surroundings or influences which immediately prompted to the consummation of the new contracts, but enough appears to justify a court of equity in withholding its active interposition for the enforcement of the contract.

The only consideration ever paid by the plaintiff for the deed sought to be foreclosed as a mortgage in this case, was two hundred dollars, which was loaned to defendant, at the rate of thirty-six per cent per annum; the plaintiff held the legal title to the land, but, as before seen, he held the same simply as a security for the repayment of the sum loaned and in trust for the defendant; the defendant had sold a considerable portion of the land to other persons, and had given his bonds for title, upon some of which suits had already been commenced against the defendant; the defendant had, at one time, offered to pay plaintiff a part of the money due him, and at another time he offered to pay the whole, both of which were refused, on the ground that plaintiff owned the land absolutely, and defendant's right to redeem was forfeited, and this too while the plain-

tiff held the defendant's note in full force, and uncanceled; with these circumstances of necessity and oppression surrounding the defendant, the plaintiff goes, uninvited, with his attorney, to the house of the defendant, and become his guests for the night; during their generous and friendly visit they succeed in "compromising" the claim of the plaintiff for two hundred dollars, loaned money, and its interest, by agreeing to take three thousand dollars in American gold therefor, if paid in ten days; and afterwards, in the same generous vein, the plaintiff, in consideration of the payment of sixty dollars interest in advance, extends the time to sixty days, and takes the absolute deed in controversy, as security for the payment of the principal sum. These facts do not constitute a technical duress at law, but they afford such indubitable indications of imposition and undue advantage as will justify a court of equity in refusing its active interposition for the specific enforcement of this substituted contract.

This doctrine of courts of equity, which withholds aid in such cases, though not amounting to technical duress, has its exemplification, in many cases, in the books, and is recognized by the elementary authorities. Mr. Willard, in his work on Equity Jurisprudence, says: "Courts of equity watch with extreme jealousy all contracts made by persons, when there is any ground to suspect imposition, oppression or undue advantage being taken by one of the parties, or when one trusts to another with a blind and credulous confidence, or when one of the parties from whom an advantage has been obtained was in circumstances of extreme necessity and distress. Undue influence can hardly ever obtain its object without some degree of fraud, but the cases show that it may exist without moral fraud. It has nearer affinity to *duress* than to fraud, and in some cases it may contain a mixture of both. In describing what undue influence is, it was said by Lord LANGDALE, on one occa-

sion, that "there are transactions in which there is so great an inequality between the contracting parties, so much of habitual exercise of power, on the one side, and habitual submission, on the other, that without any proof of the exercise of power beyond that which may be inferred from the nature of the transaction itself, a court of equity will impute an exercise of undue influence." Willard's Equity Jurisprudence, 170. In *Nielson* v. *McDonald*, 6 Johns. Ch., 201, the Chancellor refers to several authorities, which being inaccessible to us, we quote his review of them. In *Proof* v. *Hines* (cases temp. Talbot, 111), a bond was obtained not purely voluntarily, but under necessity. Advantage was taken of the party's circumstances and distress, and the Chancellor ordered the bond to stand as a security only for what was truly due at the time. So in *Gould* v. *Okeden*, 3 Bro. P. C., 560, a conveyance obtained by taking an unreasonable advantage of the party's distress, ignorance and dependence, was ordered to stand as a security only for what was *bona fide* due. The same was declared in *Kennick* v. *Hudson*, 6 Bro. P. C., 614, and in *Thornhill* v. *Evans*, 2 Atk., 330. In the latter case, Lord HARDWICKE set aside a deed obtained by fraud and impósition, and declared that where there was an act of extortion, the court would decree the party to refund. * * * * The cases which have been mentioned are only familiar illustrations of the ordinary doctrine and practice of the Court. The decree rendered by the Chancellor in the case of *Nielson* v. *McDonald* was afterwards reversed in the Court of Errors by a vote of sixteen to eleven (2 Cow., 139), but the rule above stated was not questioned or doubted.

Although the deed sought to be foreclosed as a mortgage, in this case, was unduly obtained, yet it is a well settled rule in equity that it shall stand for what was truly due. at the time. The defendant admits that the amount for which the decree below was rendered was justly due, and

the plaintiff does not claim any more upon the hypothesis on which the decree is based. While it is probable that upon a plea of usury by the defendant, or upon a proper calculation of interest upon the amount originally loaned, the decree for the plaintiff would be for a less amount than rendered below, yet in the absence of such plea, and of any complaint by either party as to the amount of the decree upon the basis determined, this Court will not interfere with it.

Affirmed.